UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**NOT FOR CITATION**

JAMES RAY TILLEY,

    Plaintiff,

vs.

MARK TRACY, Santa Cruz County Sheriff; SANTA CRUZ COUNTY DEPARTMENT OF MENTAL HEALTH; DR. STEIN, Chief Medical Officer, Santa Cruz County Jail; DOE number 1, Director, Department of Mental Health, Santa Cruz County; ROXANN HUNT, Correctional Officer; ANDREW LERIOS, Correctional Sergeant; DOE, Badge Number S-35, Correctional Sergeant; Correctional Lieutenant HARTNESS; DOE, Detention Nurse Manager; DOE OFFICERS; DOES NURSES; and DR. NOORONIE MULAHA, Psychiatrist at Santa Cruz County Jail,

    Defendants.

No. C 03-5701 PJH (PR)

**RULINGS AND ORDER**

(Docs 14, 22, 23, 24, 30, 51, 57)

This is a civil rights case filed pro se by a person hospitalized as a Sexually Violent Predator ("SVP"). In the initial review order the court identified four categories of claims: Overcharging, medication, medical attention, and misdiagnosis. The court concluded that plaintiff had stated a claim against defendant Nooronie Mulaha[1] as to the misdiagnosis claim, and dismissed the other claims with leave to amend. Plaintiff abandoned the overcharging claim in the amendment. On its review of the amended complaint, the court concluded that plaintiff had stated a claim against Roxann Hunt and Doe officers and

---

[1] The doctor's correct name is Mohammed S. Mollah. He does not dispute that he was the psychiatrist who treated plaintiff.

nurses for consistently bringing his diabetic medication, which is to be taken with meals, one and half hours to two hours before meals,[2] and against defendants Lerios and Hartness for threatening to retaliate against him for writing grievances. The remaining named defendants, then, are Mollah, Hunt, Lerios and Hartness. These defendants have filed motions for summary judgment. Plaintiff has opposed them, and has filed several motions of his own.

## DISCUSSION

*A.   Standard of Review*

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

*B. Analysis*

   *1. Dr. Mollah's motion for summary judgment*

Plaintiff contends that Dr. Mollah prescribed Lorazepam, an anti-anxiety medication,

---

[2] He alleges that instead of a full meal he was given a banana, an energy bar, or a nutritional drink.

"without a clear diagnosis" and when he did not suffer from anxiety.

Because plaintiff is not a convicted criminal and technically is not being punished, the Eighth Amendment, which deals with punishment, does not apply here. The Due Process Clause provides the basis for constitutional medical claims by persons who have been civilly committed under the Sexually Violent Predator law, such as plaintiff. *See Youngberg v. Romeo*, 457 U.S. 307, 321 (1982) (substantive due process requires State to provide reasonable safety for involuntarily committed person); *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (pre-commitment SVP). In *Youngberg* the Court held: "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323.

The Seventh Circuit has held that the "professional judgment standard" of *Youngberg* "is at least as demanding as the Eighth Amendment 'deliberate indifference' standard." *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (1998). "In the context of a claim for inadequate medical care, the professional judgment standard requires essentially the same analysis as the Eighth Amendment standard." *Id.* at 989. That is, a claim which fails under a deliberate indifference standard also fails under the "professional judgment" standard. The Ninth Circuit, however, has held, in a case involving a pre-commitment SVP, that "to prevail on a Fourteenth Amendment claim regarding conditions of confinement, the confined individual need not prove 'deliberate indifference' on the part of government officials." *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004). Unfortunately, it did not say what standard *does* apply.

The *Youngberg* standard can be applied to Dr. Mollah, who clearly was exercising professional judgment of the sort to which *Youngberg* speaks, and as it happens under the circumstances of this case the exact severity of that standard makes no difference, as the outcome is clear under any credible definition of it. As will be seen below, it is rather more

3

difficult to apply that standard to defendant Hunt, a correctional officer who is not alleged to have done anything involving professional judgment.

Dr. Mollah's declaration and the documents he has submitted in support of it show that he did make a diagnosis, and that as a consequence he prescribed Risperdial, an anti-psychotic, and Lexapro, an anti-depressant.

In response to Dr. Mollah's factual showing, plaintiff says that he was told by a person named "Anitra" at Atascadero State Hospital that his Santa Cruz medical records show that he had been prescribed Lorazepam by Dr. Mollah. This hearsay statement obviously is not sufficient to generate a genuine issue of material fact as to whether Lorazepam was prescribed.

In addition to saying that he was told he had been prescribed Lorazepam, plaintiff also says that he had fairly severe side effects from taking the prescribed medication. The existence of side-effects is not enough in itself to show that professional judgment was not exercised, given the medical determination that the medication was appropriate for plaintiff's condition.

There is no genuine issue of material fact on the points that Dr. Mollah did make a diagnosis that plaintiff suffered from a mental illness, that he did not prescribe lorazepam, and that he prescribed medications appropriate to the illness he diagnosed. Plaintiff's contention that he did not suffer from anxiety is irrelevant, since Dr. Mollah did not prescribe an anti-anxiety medication. On this record, as a matter of law Dr. Mollah's actions were not such a departure from professional standards (if they were a departure at all) that they could not have been based on professional judgment at all, the *Youngberg* standard.

Dr. Mollah's motion for summary judgment is granted.

*2.   Motion for summary judgment by defendants Hunt, Lerios and Hartness*

*a.   Retaliation claim*

Plaintiff alleges that Lerios and Hartness came to his cell and threatened him with

4

1  transfer to an undesirable cell in the medical department if he did not stop grieving the
2  issue of the late meals on weekends and holidays.

3  "Within the prison context, a viable claim of First Amendment retaliation entails five
4  basic elements: (1) An assertion that a state actor took some adverse action against an
5  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled
6  the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably
7  advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th
8  Cir. 2005) (footnote omitted). A prisoner must at least allege that he suffered harm, since
9  harm that is more than minimal will almost always have a chilling effect. *Id.* at 408 F.3d at
10 567-68 n.11; *see Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a
11 retaliation claim is not actionable unless there is an allegation of harm).

12 Lerios and Hartness say in their declarations that they came to his cell as part of the
13 investigation of one of plaintiff's grievances about the excessive time between the insulin
14 injections and a full meal on weekends and holidays. Hartness says he did not threaten
15 plaintiff with isolation in the medical unit, but rather told him that if the risk to his health was
16 a great as plaintiff feared, perhaps if would be safer for him to be in that unit where he
17 could be monitored. Lerios, who was along as a witness, says his only part was to confirm
18 that if plaintiff's health was at such risk, he should be in the medical unit. Given plaintiff's
19 statement in his declaration that Hartness told him that he would be transferred if he did not
20 stop grieving this issue, and Hartness' statement that he did not threaten plaintiff with
21 transfer to the medical unit, there is a genuine issue of material fact as to what Hartness
22 said. The court therefore will assume the truth of plaintiff's version for purposes of this
23 ruling.

24 Lerios and Hartness contend that they had a legitimate penological purpose in their
25 visit to plaintiff, which may well be true, and that their discussion with him of moving to the
26 medical unit also had a legitimate penological purpose, i.e., the preservation of plaintiff's
27
28

1 health, and that also may be true.[3]  But there can be no legitimate penological purpose in
2 telling him that he would be transferred to an undesirable unit[4] if he did not stop filing
3 grievances, which is the essence of plaintiff's claim.

4     Because there is a genuine issue of material fact as to what Hartness and Lerios
5 said to plaintiff, and because on plaintiff's version of the facts these two defendants are not
6 entitled to judgment as a matter of law, their motion for summary judgment is denied.

        *b.*    *Medical claim*

8     Defendants Hunt, Lerios and Hartness contend that they are entitled to summary
9 judgment on plaintiff's medical claim because they were only involved in one incident of
10 delay between giving the insulin shot and serving breakfast.  Plaintiff did not allege in his
11 amended complaint that Lerios and Hartness were liable on this claim, however; as the
12 court noted in its order of service, the medical claim was initially dismissed because plaintiff
13 had not named any specific defendant on that claim, and in the amendment he cured that
14 defect by naming "Roxanne Hunt and Doe officers and nurses."  Because the claim is not
15 addressed to them, the portion of the motion for summary judgment of Lerios and Hartness
16 going to the medical claim will be denied as moot.

17     As to Hunt, plaintiff contends that she was the person who delivered breakfast at
18 least two hours after his insulin shot on June 16, 2001.  She also was the first respondent
19 on his grievance regarding breakfast being late on that date.

20     On this record, there is no genuine issue of material fact that Hunt, a rank-and-file
21 correctional officer, was not informed of the supposed danger to plaintiff's health until she
22 received his grievance, which obviously was filed *after* she served breakfast on June 16,
23 because it was a complaint about it.  Thus, whatever standard is appropriate for

---

[3] They do not contend that he suffered no harm.

[4] Plaintiff claims he was threatened with transfer to the "O" medical unit, which he says is a lockdown unit where inmates are let out of their cells for one hour a day on Mondays, Wednesdays, and Fridays; the rooms are cold; inmates are not allowed personal property, including legal papers; and lights are on twenty-four hours a day.

6

determining whether she violated plaintiff's due process right to have his medical needs met, short of strict liability, she could not have violated it.  Her motion for summary judgment will be granted.

## CONCLUSION

1. The motion for summary judgment of defendant Mollah (doc 30) is **GRANTED** in its entirety.

2. The motion for summary judgment of defendants Hunt, Lerios and Hartness is **GRANTED IN PART AND DENIED IN PART**.  It is **GRANTED** as to all claims against defendant Hunt.   Because the amended complaint does not allege medical claims against Lerios and Harness, that part of their motion for summary judgment is **DENIED** as moot.  Summary judgment is **DENIED** as to the retaliation claim against Hartness and Lerios.

3. Plaintiff's motion for leave to amend (doc 14) is denied as it is not accompanied by a proposed amendment.  Defendants' motion for an extension of time to file their motion (doc 22) is **GRANTED**.  The motion is deemed timely.  As a consequence, plaintiff's motion for default judgment (doc 23) is **DENIED**.  His motion for postage (doc 51) is **DENIED** as moot because he has succeeded in mailing his materials to the court.  His motion to compel discovery (doc 57) is **DENIED** for the reasons set out in defendants' opposition.

4. In order to resolve this case expeditiously, the court sets the following deadlines:

   a. Any further requests to amend the complaint are due by April 10, 2006.

   b. The discovery deadline is May 16, 2006.

   c. The dispositive motion deadline is June 20, 2006.  Opposition to any dispositive motion is due twenty-one days from the date the motion is filed.  Any reply is due fourteen days from the date the opposition is filed.  Motions will be considered without oral argument, so should not be noticed for hearing.

**IT IS SO ORDERED.**

Dated:  March 28, 2006.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.03\TILLEY701.SJ

7